Case number five is United States v. Musgraves. Mr. Meneghini. Good afternoon, your honors. May it please the court, Michael Musgraves. Mr. Musgraves appeals his resentencing after this court acquitted him of several of his convictions. In 2015, the jury convicted Mr. Musgraves on five counts, and the district court sentenced him to 240 months in prison. On appeal, this court threw out three out of five of those convictions, including conspiracy to distribute cocaine, distribution of cocaine, and felon in possession of a firearm. The case was remanded for resentencing on the remaining two convictions, maintaining a drug-involved premise, and felon in possession of a firearm. On remand, the district court resentenced Mr. Musgraves to the same exact sentence of 240 months in prison. This court should vacate that sentence for three independent reasons. First, Mr. Musgraves was erroneously sentenced as a career offender when his instant offense of maintaining a drug-involved premise is not a qualified and controlled substance offense under the guidelines. Second, the reimposed 240-month sentence is substantively unreasonable. And third, the district court erred in relying on the government's so-called framing theory as relevant conduct after this court already found that there was no such evidence of it in the first appeal. Each of these reasons warrants remand. Now, turning to— Can I assume that the sentence is unreasonably high because it was unchanged after, you know, the three of the five convictions were reversed? But couldn't the district court properly consider even acquitted conduct in sentencing? And why would the imposition of the same sentence mean the current sentence is too high, as opposed to the court indicating his belief that the overall danger to the public and the need for determinants and the gravity of the offense were all unchanged? Your Honor, to answer your first question, yes, the district court is able to consider acquitted conduct as relevant conduct. But here, I think we have a little bit of a unique situation. And what we have is this rare situation where we have a really good comparison here. We have the initial sentencing, where we have the five convictions, and then we have three of them are reversed by this court. And we have the same defendant with the same history with three less convictions. And certainly, every conviction, like, certainly has to carry some sort of weight to it and certainly has to have some impact on a sentence. And so when it goes back down with the three less convictions, first, the district court itself recognized that the conspiracy conviction was completely off the table. After the appeal, the district court said that the Seventh Circuit laid that out really well. There's no evidence of it. It wasn't considering that one. As to the framing theories, it goes to the third point. But essentially, this court also said that there was no evidence of that. And so you have the reason. And so certainly, the 240 months will seem unreasonably high when you compare it when he was convicted to that same thing for the five convictions. On the career offender issue, counsel, is it your view that we would have to use a categorical method to evaluate that 856 conviction? So 856 is not categorically either a qualifying or non-qualifying. And so what we'd have to look is if there's, if you have to look at the verdict, you have to look, the guidelines tell us to look at the offense. The conviction is the focus and you have to look at what the conviction established. And so in this case, so in this case, we just have the jury instruction that says manufacturing, distributing or using. But there can be instances where you have the jury verdict, maybe a special verdict or it's written differently. Or if there's another conviction, right? Yeah. The conspiracy conviction, for example, would presumably support treating the 856 as a drug trafficking crime, right? Yes, Your Honor, if there was. Okay. And but we don't, here the underlying conviction has been thrown out. So I'll be interested to hear from the government about this. But we also have the district judge telling us that really doesn't matter to me because if I recall correctly, there's really no evidence that anybody was using drugs at Mr. Musgrave's home. But there's substantial evidence that that was the place to pick up cocaine from Tisdale, Gordon, Stevens, Bach, and Boner, if I remember correctly. Yeah, Your Honor, I think part of the problem is that we don't have, maybe as the district judge said, there's no evidence of using. But that's perhaps because of the case that the government put on and the charges that it brought. And so there was no charge of abusing. So it wasn't up to Mr. Musgrave to come forward and say, no, no, no. I was only using. Yeah, I wasn't distributing. I was only using. He didn't have to prove, and certainly just looking at the 856 charge, he didn't have to, if the charge just said manufacturing distributor using. No, but what do we do with the district judge's statements that this ultimately doesn't matter because I've got substantial evidence in front of me indicating that this house was, in fact, used for drug distribution. And I ought to treat it that way, whether I'm right about this in a hyper-technical guideline issue or not. Because the guidelines tell us that you have to look at the conviction, and you have to look at what the conviction established. No, that's what the guidelines say, but the guidelines are guidelines. And so, and we've got a district judge here doing, from one perspective, what members of this court and a variety of opinions for the court have urged district judges to do. Look past the technical guideline issues and ask yourself, under 3553A, what's the appropriate sentence? And the judge here is telling us he did that. Your Honor, because in the way that the instruction was in 856, I mean, if it would have been different, I mean, it could have changed the strategy on how you approach the 856. If the defense knew that 856 was just going to be a qualifying offense, no matter what, or if it had to somehow argue that 856 is limited to, it had to parse out those three different prongs of 856, it could have perhaps changed something, or whether they gave a special, a verdict, or something to that effect where we figure out what the jury is actually finding. It's just as reasonable to say the jury looked at this instruction and said, well, at the very least, I think, you know, there's probably use being going on there, so let's just convict on this one. And so, we don't know exactly what the jury found here and what he was convicted of and whether or not 856 is a qualifying offense here before we even, we have to, the judge has to figure that out and determine that to calculate the correct guidelines before we even get to relevant conduct. And so, I would just like to touch on the third issue of the framing theory. As I mentioned, the framing theory, which goes to the planting of the cocaine in the firearm in Justice Smith's car, weighed heavily on the district court judgment during sentencing. It made it very clear that that was a big, a significant factor in determining the sentence. And so, but this court already kind of made a determination and made a finding. We used some pretty strong language, no evidence, but it was also, that was used in the context of evaluating whether there was proof beyond a reasonable doubt. And a district judge is entitled to make findings by a preponderance. And we've got some circumstantial evidence that this was a frame-up by Mr. Musgraves. Your Honor, and so, this court first said that it didn't meet up to the beyond a reasonable doubt. And that's what the government district court picks up on, because that's what the standard that this court was judging against. Later on, as it goes through the analysis in this court's opinion, it says that there was no evidence, that apart from the theory, there was no evidence to support an inference. And that there was no evidence tying, there was the intervening search, which didn't recover the gun. And then later, and so there's no evidence tying him back to the gun. And there was no evidence at all tying him to the cocaine package that was found in the car. And so, and the government then backs up this theory during re-sensing, says it's well-supported. And then the brief makes several, several inferences of how we get to being well-supported by evidence. But it doesn't actually point to any evidence that supports the framing theory. And so, I think that falls well short of preponderance of the evidence and should not have been considered as relevant conduct. I'll reserve the remainder of my time. Thank you, counsel. Mr. Boyce. Good morning. May it please the court. Counsel, Don Boyce from Southern Illinois, here this morning on behalf of the United States. Musgraves is challenging his sentence on remand after his first trip to this court. His first challenge is to that finding that he was a career offender under the guidelines. The government's first response is that he was not sentenced as a career offender. The low end of the career offender guideline was 262 months, and the defendant was sentenced to 240. Nevertheless, the calculations the judge started with did call him a career offender, correct? Correct. Correct. Absolutely. And the 240 sentence is higher than the sentence without the career offender. Much. Right. But he was not sentenced as a career offender. The court also made the, also made the... I don't know what that means, but I understand your point. To be more clear, he was not sentenced within the career offender guideline range. And more importantly, the court did make those comments multiple times that this would be the court's sentence based on the 3553A factors, whether or not the district court was correct in its finding that Musgraves was a career offender. So that is, in the government's view, the essence of a harmless error analysis. To the extent that the court... Ordinary, let me just push you on that a little bit, Mr. Boyce.  If this were the first sentencing, I would have a little trouble with that. But if we look back at the original sentencing transcript, we see that Judge Reagan was troubled by the, I think he called it the sentencing tail wagging the fairly modest offense dog. On remand, it's much more lopsided with the sentencing tail, right? Wagging a much smaller dog, if I can carry forward with a metaphor. And I'll frankly tell you, I'm a little more skeptical about that kind of a declaration under these circumstances where several convictions are set aside and the judge imposes the same sentence again. Legally, he can do it. The question is, was it proper here? Well, Judge, I think the transcript basically speaks for itself. I think the judge said at least three different times, this would be my sentence even without the finding on career offender. He did mention the tail wagging the dog again, although he didn't analyze that analogy much further. But it was mentioned. So really, you go back to the findings of the court under 3553A. And the court, in the government's view, did not abuse its discretion. The record shows that the court was troubled by the nature of the offense. Drug dealing, endangering children, drugs being sold from the house where children lived, basically adjacent to a junior high school. The court was very troubled by the defendant's criminal history, especially a lot of prior convictions that did not receive consideration under the guidelines. Drug trafficking priors, violent priors, priors for possessing weapons, things that really do go right to the heart of what this case was about. The court noted that the defendant had done that. A lot of those prior convictions were committed while under various forms of court supervision. And the court said, I believe you will be a recidivist. And the court said, I believe we will need to protect the public from future crimes by you. How old is Mr. Musgraves at this point? I don't know his exact age, Your Honor. I would guess that he's around age 40, somewhere in that general area. The court called Musgraves' adult life basically a history of not working, not supporting his children, selling drugs, and possessing weapons while under court supervision. So to really boil down to the heart of the sentence, those are proper factors. Those were proper considerations under 3553A. So to go back and answer your initial question of, should you really look at this as harmless error, I would submit that the record does support that. That when the court says, I would have done this with or without the career offender, the court backed that up. As to the issue of considering the acquitted conduct, counsel admitted correctly that the court can do that. So where that leaves Musgraves is challenging factual findings of the district court at the clear error standard. So this court would have to find that those factual findings of the district court violate the laws of nature or are so improbable that no reasonable fact finder could have drawn those conclusions. So as the advocate of the framing theory, I'll readily admit that it requires inference. No one saw Musgraves put those items in Jesse Smith's car. Let me throw a civil hypothetical at you, Mr. Poise. And let's suppose the person who's accused of doing the framing is a police officer in a civil case where, let's take it's Mr. Smith's car. Mr. Smith testifies that he has no knowledge of the gun or the cocaine that was found in his car. He didn't put it there. And it must have been the only person with access to it than Smith himself was a police officer who made the arrest. So it was planted by the officer. Is that a reasonable inference? It could be if Smith is believed. And that's the kind of credibility determination that the district court was able to make in this case. And in this case, there were a lot of other surrounding circumstances beyond what was contained in your hypothetical. Yeah, yeah. I don't think it gets beyond a reasonable doubt for reasons we stated in the earlier decision. We understand you don't agree with that. It doesn't matter what I think. The court is the ultimate authority on that. And the government did not seek further review. So you're right. It did not get beyond a reasonable doubt. So with that said, the bottom line is this reasonableness. And the district court was, may not have weighed the factors as Mr. Musgrave would have liked and may not have weighed the factors as this court would. But to say that it's an abuse of discretion when the court tied its reasoning very clearly to those 3553A factors and pointed to facts that really do tie to the problems in this case and really do tie to the defendant's own history and do tie to the goals of the sentencing statute, the government would submit that that sentence is lawful and it was not an abuse of discretion and that it should be affirmed. There are no other questions. I'll just say thank you. Mm-hmm. Thank you, counsel. Anything further? Mr. Meneghani. Yes, your honor. Just one very brief point. Just with respect to the harmless error, I don't think harmless error applies here. The judge must first calculate the correct guidelines range and that's a procedural error. And even so, calculating that first guideline range certainly anchors the judge's perception of what an appropriate guideline sentence is. And so that anchors it all the way up there at 260 to 300. So is harmless error impossible then under if the guidelines are not correctly calculated? On this anchoring theory? I would think so. We have said, I don't know how many times, that a judge who confronts this kind of very technical issue under the guidelines, and this counts as technical, should look beyond the technical guidelines point and ask him or herself, what's the appropriate sentence under 3553A? Are those cases all wrong? No, your honor. But I think this one is a little unique. As you mentioned during the first sentencing, the judge was already troubled by the guideline range and how much it outweighed the non-guideline. And so the same thing here. When you have such a great disparity here, when it was in the second recency, I think it was about three times as much. And so when the judge was already troubled beforehand, now has three less convictions, including less, no conspiracy and no distribution. And now somehow is not troubled by that disparity. I think certainly we can see that the career offender guidelines anchored the judge's perception of what is reasonable in this case. And so for those reasons, we'd ask you to vacate. Thank you. Thank you very much. Mr. Meneghini, you're not, I believe, technically appointed in this case. But the court really appreciates your willingness and that of Mr. Park and that of Winston and Strong to step in at Mr. Musgrave's request and represent him. You've done a service to your client as well as to the court. The case is taken under advisement.